Alan H. Weinreb, Esq.
THE MARGOLIN & WEINREB LAW GROUP, LLP
165 Eileen Way, Suite 101
Syosset, New York 11791
Telephone: (516) 945-6055
alan@nyfclaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
WEST COAST 2014-7, LLC,

                            Plaintiff,

      -against-

STEPHEN F. LUKE; STEPHEN F. LUKE, SR.; TIFFANY
N. STUART; NEW YORK METHODIST HOSPITAL,
                               Defendant(s).
-----------------------------------------------------------------------X

CERTIFICATE OF
MERIT AFFIRMATION
PURSUANT TO
CPLR 3012-B

       Alan Weinreb Esq. pursuant to CPLR §2106 and under the penalties of perjury, affirms
as follows:

1. I am an attorney at law duly licensed to practice in the state of New York and am
   affiliated with The Margolin & Weinreb Law Group, LLP, the attorneys of record for
   Plaintiff in the above-captioned mortgage foreclosure action. As such, I am fully
   aware of the underlying action, as well as the proceedings had herein.

2. On November 20, 2019, I communicated with the following representative or
   representatives of Plaintiff, who informed me that he (a) personally reviewed
   plaintiff's documents and records relating to this case for factual accuracy; and (b)
   confirmed the factual accuracy of the allegations set forth in the Complaint and any
   supporting affidavits or affirmations filed with the Court, as well as the accuracy of
   the notarizations contained in the supporting documents filed therewith.

   Name: Glenn Ohno              Title: Vice President of Operations

3. Based upon my communication with Glenn Ohno, as well as upon my own
   inspection, review and other reasonable inquiry under the circumstances, including,
   but not limited to the review of the facts of the case as well as of the underlying note,
   mortgage and assignments, if any, modification(s), if any and extension and
   consolidations, if any, I affirm that, to the best of my knowledge, information, and
   belief, there is a reasonable basis for the commencement of the within foreclosure
   action and that the Plaintiff is currently the creditor entitled to enforce the rights of
   said documents noted above. A copy of the note, mortgage and assignments, if any,
   modification(s), if any and extension and consolidations, if any, are annexed hereto.

4. I am aware of my obligations under New York Rules of Professional Conduct (22 NYCRR Part 1200) and 22 NYCRR Part 130.

Dated: January 14, 2020
      Syosset, New York

                       /s/ Alan H. Weinreb
                       Alan H. Weinreb, Esq.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



20050930000526004001E2DDA

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 14 |
|---|---|---|
| **Document ID: 2005093000526004** | Document Date: 09-29-2005 | Preparation Date: 09-30-2005 |
| Document Type: MORTGAGE | | |
| Document Page Count: 12 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| SAFEWAY ABSTRACT CORP. | COUNTRYWIDE HOME LOANS, INC. |
| AS AGENT FOR STEWART TITLE SAK-4190 | P.O. BOX 10423 |
| 100 GARDEN CITY PLAZA | VAN NUYS, CA 91410 |
| GARDEN CITY, NY 11530 | |
| 516-632-7170 | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7901 | 44 | Entire Lot | 5610 AVENUE N |

**Property Type:** DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

**Document ID:** 2005093000526001

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| STEPHEN F. LUKE | COUNTRYWIDE HOME LOANS |
| 190 EAST 17 STREET | 4500 PARK GRANADA |
| BROOKLYN, NY 11226 | CALABASAS, CA 91302 |

x  Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 97.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 119,200.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 119,200.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 596.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 1,341.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 298.00 | | |
| MTA: | $ | 327.60 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 2,562.60 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed     10-19-2005 13:13
City Register File No.(CRFN):
**2005000581025**

*Annette M. Hill*

*City Register Official Signature*



2005093000526004001C2F5A

**Document ID:** 2005093000526004    Document Date: 09-29-2005    Preparation Date: 09-30-2005
Document Type: MORTGAGE

## PARTIES

**MORTGAGER/BORROWER:**
STEPHEN F. LUKE, SR
190 EAST 17 STREET
BROOKLYN, NY 11226

**MORTGAGER/BORROWER:**
TIFFANY N. STUART
190 EAST 17 STREET
BROOKLYN, NY 11226

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
BONNIE BURNETT

—————————————— [Space Above This Line For Recording Data] ——————————————

[Doc ID #]

## MORTGAGE

### WORDS USED OFTEN IN THIS DOCUMENT

(A) "Mortgage." This document, which is dated  SEPTEMBER 29, 2005  , will be called the "Mortgage."

(B) "Borrower."

STEPHEN F LUKE, AND STEPHEN F LUKE SR, AND TIFFANY N STUART

whose address is
190 EAST 17TH STREET, BROOKLYN, NY 11226
will sometimes be called the "Borrower" and sometimes simply "I."

(C) "Lender."
COUNTRYWIDE HOME LOANS, INC.

will be called the "Lender." Lender is
A CORPORATION
which was formed and which exists under the laws of NEW YORK                     Lender's
address is
4500 Park Granada, Calabasas, CA 91302-1613

(D) "Note." The junior lien note signed by Borrower and dated  SEPTEMBER 29, 2005  , and extensions and renewals of that note, will be called the "Note." The Note shows that I owe Lender U.S.
$ 119,200.00    plus interest, which I have promised to pay in full by
 OCTOBER 01, 2020   .

(E) "Property." The property that is described below in the section titled "Description of the Property" will be called the "Property."

### BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Mortgage. This means that, by signing this Mortgage, I am giving Lender those rights that are stated in this Mortgage and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I do not:

(A)  Pay all the amounts that I owe Lender as stated in the Note;

(B)  Pay, with interest, any amounts that Lender spends under this Mortgage to protect the value of the Property and Lender's rights in the Property; and

(C)  Keep all of my promises and agreements under this Mortgage.
THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

Section: _____ Block: _____ Lot: _____ Unit: _____

| NEW YORK - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT |
|---|

Page 1 of 8

Initials:

VMP -76(NY) (0506)     CHL (08/05)(d)     VMP Mortgage Solutions, Inc. (800)521-7291          Form 3833





ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, being bounded and described as follows:

BEGINNING at a point on the southerly side of Avenue N. distant 99 feet 8 inches westerly from the corner formed by the intersection of the southerly side of Avenue N and the westerly side of East 57th Street;

THENCE southerly parallel with East 57th Street and part of the distance through a party wall, 100 feet;

THENCE westerly parallel with Avenue N, 19 feet 10 inches;

THENCE northerly parallel with East 57th Street and part of the distance through a party wall, 100 feet to the southerly side of Avenue N;

THENCE easterly along the southerly side of Avenue N, 19 feet 10 inches to the point or place of BEGINNING.

SAID PREMISES IMPROVED BY A
ONE OR TWO FAMILY DWELLING
ONLY.

With respect to the amounts that I owe under the Note and under this Mortgage, I waive the benefit of the right which is known as the "homestead exemption." A homestead exemption is a property owner's right to keep a portion of his property (usually up to a certain dollar amount) free from the claims of creditors. My waiver of this right means that the Lender may exercise all of its rights under this Mortgage as if I were not entitled, under law, to the benefits of a homestead exemption.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the following Property:

(A) The property which is located at

5610 AVENUE N, BROOKLYN
[Street, City]

New York 11234-4008 . This Property is in KINGS

[Zip]

County in the State of New York. It has the following legal description:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

(B) All buildings, structures and other improvements that are located on the property described in paragraph (A) of this section;

(C) All rights in other property that I have as owner of the property described in paragraph (A) of this section. These rights are known as "easements, rights and appurtenances attached to the property";

(D) All rents or royalties from the property described in paragraph (A) of this section; and

(E) All of the property described in paragraphs (B) through (D) of this section that I acquire in the future, and all rights described in paragraphs (B) through (D) of this section that I acquire in the future.

It may be that I do not own the Property but am a tenant under a lease. In that case, the rights I am giving to Lender by this Mortgage are rights in my tenancy.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property other than claims and charges of record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because, as a result of something I have done, someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## UNIFORM PROMISES

I promise and I agree with Lender as follows:

1. **BORROWER'S PROMISE TO PAY PRINCIPAL AND INTEREST UNDER THE NOTE AND TO FULFILL OTHER PAYMENT OBLIGATIONS**
   I will promptly pay to Lender when due principal and interest under the Note and late charges as stated in the Note.

Form 3833

**2. AGREEMENTS ABOUT MONTHLY PAYMENTS FOR TAXES AND INSURANCE**

**(A) Borrower's Obligation to Make Monthly Payments to Lender for Taxes and Insurance**

I will pay to Lender all amounts necessary to pay for taxes, assessments, ground rents (if any), and hazard insurance on the Property and mortgage insurance (if any). I will pay those amounts to Lender (i) unless Lender tells me, in writing, that I do not have to do so or (ii) unless the law requires otherwise. Also, I will not have to pay to Lender any amount for which I am already making monthly payments to the holder of any superior mortgage or deed of trust, if it is a savings or banking institution. I will make those payments on the same day that my monthly payments of principal and interest are due under the Note.

The amount of each of my payments under this Paragraph 2 will be the sum of the following:

   (i) One-twelfth of the estimated yearly taxes, assessments (including condominium and planned unit development assessments, if any) and ground rents (if any) on the Property which under the law may be superior to this Mortgage; plus

   (ii) One-twelfth of the estimated yearly premium for hazard insurance covering the Property; plus

   (iii) One-twelfth of the estimated yearly premium for mortgage insurance (if any).

Lender will determine from time to time my estimated yearly taxes, assessments, ground rents and insurance premiums based upon existing assessments and bills, and reasonable estimates of future assessments and bills. (Taxes, assessments, ground rents and insurance premiums will be called "taxes and insurance.")

The amounts that I pay to Lender for taxes and insurance under this Paragraph 2 will be called the "Funds." The Funds are additional protection for Lender in case I do not fulfill my obligations under the Note and under this Mortgage.

**(B) Lender's Obligations Concerning Borrower's Monthly Payments for Taxes and Insurance**

Lender will keep the Funds in a savings or banking institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency. If Lender is such an institution then Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay taxes and insurance. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds, and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds on deposit, for using the Funds to pay taxes and insurance, for analyzing my payments of Funds, or for receiving, verifying and totalling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Mortgage, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

If Lender's estimates are too high or if taxes and insurance rates go down, the amounts that I pay under this Paragraph 2 will be too large. If this happens at a time when I am keeping all of my promises and agreements made in this Mortgage, I will have the right to have the excess amount either promptly repaid to me as a direct refund or credited to my future monthly payments of Funds. There will be excess amounts if, at any time, the sum of (a) the amount of Funds which Lender is holding or keeping on deposit, plus (b) the amount of the monthly payments of Funds which I still must pay between that time and the due dates of taxes and insurance, is greater than the amount necessary to pay the taxes and insurance when they are due.

If, when payments of taxes and insurance are due, Lender has not received enough Funds from me to make those payments, I will pay to Lender whatever additional amount is necessary to pay the taxes and insurance in full. I must pay that additional amount in one or more payments as Lender may require.

When I have paid all of the amounts due under the Note and under this Mortgage, Lender will promptly refund to me any Funds that are then being held or kept on deposit by Lender. If, under Paragraph 20 below, either Lender acquires the Property or the Property is sold, then immediately before the acquisition or sale, Lender will use any Funds which Lender is holding or has on deposit at that time to reduce the amount that I owe to Lender under the Note and under this Mortgage.

**3. APPLICATION OF BORROWER'S PAYMENTS**

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

   (A) First, to pay the amounts then due to Lender under Paragraph 2 above;

   (B) Next, to pay interest then due under the Note; and

   (C) Next, to pay principal then due under the Note.

**4. BORROWER'S OBLIGATION TO PAY PRIOR MORTGAGES, CHARGES AND ASSESSMENTS AND TO SATISFY CLAIMS AGAINST THE PROPERTY**

I will keep all promises that I have made in any superior mortgage or deed of trust, including my promises to make payments when due. I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Mortgage. I will see that any claim, demand or charge that is made against the Property because an obligation has not been fulfilled (known as a "lien") is promptly paid or satisfied if the lien may be superior to this Mortgage. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property.

**5. BORROWER'S OBLIGATION TO OBTAIN AND TO KEEP HAZARD INSURANCE ON THE PROPERTY**

I will obtain hazard insurance to cover all buildings, structures and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies, and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender.

I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and the form of all renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals, subject to the terms of any superior mortgage or deed of trust.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim for insurance benefits, then Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the amount that I owe to Lender under the Note and under this Mortgage. The 30-day period will begin on the date the notice is mailed, or if it is not mailed, on the date the notice is delivered.

**6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL OBLIGATIONS IN LEASE AND CONDOMINIUM AND PUD DOCUMENTS**

I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. If the Property is a unit in a condominium or in a planned unit development, I will fulfill all of my obligations under the declaration, by-laws, regulations and other documents that create or govern the condominium or the planned unit development.

**7. LENDER'S RIGHT TO TAKE ACTION TO PROTECT THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Mortgage, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as, for example, a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions under this Paragraph 7 may include, for example, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. This Mortgage will protect Lender in case I do not keep this promise to pay those amounts with interest.

I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the same rate stated in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph.

Although Lender may take action under this Paragraph 7, Lender does not have to do so.

**8. LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. However, before one of those inspections is made, Lender must give me notice stating a reasonable purpose for the inspection. That purpose must be related to Lender's rights in the Property.

9. **AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY**

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender, subject to the terms of any superior mortgage or deed of trust.

10. **BORROWER'S OBLIGATIONS TO PAY MORTGAGE INSURANCE PREMIUMS**

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay premiums in the manner described in Paragraph 2 above.

11. **CONTINUATION OF BORROWER'S OBLIGATIONS**

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Mortgage. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Mortgage.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Mortgage, even if Lender is requested to do so.

12. **CONTINUATION OF LENDER'S RIGHTS**

Even if Lender does not exercise or enforce any right of Lender under this Mortgage or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will still have the right, under Paragraph 20 below, to demand that I make Immediate Payment In Full (see Paragraph 20 for a definition of this phrase) of the amount that I owe to Lender under the Note and under this Mortgage.

13. **LENDER'S ABILITY TO ENFORCE MORE THAN ONE OF LENDER'S RIGHTS**

Each of Lender's rights under this Mortgage is separate. Lender may exercise and enforce one or more of those rights, as well as any of Lender's other rights under the law, one at a time or all at once.

14. **OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Subject to the terms of Paragraph 19 below, any person who takes over my rights or obligations under this Mortgage will have all of my rights and will be obligated to keep all of my promises and agreements made in this Mortgage. Similarly, any person who takes over Lender's rights or obligations under this Mortgage will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Mortgage. (In this Mortgage, the word "person" means any person, organization, governmental authority or any other party.)

If more than one person signs this Mortgage as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Mortgage. Lender may enforce Lender's rights under this Mortgage against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under the Note and under this Mortgage. However, if one of us does not sign the Note, then: (A) that person is signing this Mortgage only to give that person's rights in the Property to Lender under the terms of this Mortgage; and (B) that person is not personally obligated to make payments or to act under the Note or under this Mortgage. Any person signing this Mortgage but not signing the Note also agrees (i) that Lender may allow any other Borrower to delay or to change payments due under the Note or under this Mortgage and (ii) that Lender may make other accommodations under the Note or under this Mortgage. Lender may do this without obtaining anyone's consent and without modifying the effect of this Mortgage.

15. **AGREEMENT ABOUT GIVING NOTICES REQUIRED UNDER THIS MORTGAGE**

Unless the law requires otherwise, any notice that must be given to me under this Mortgage will be given by delivering it or by mailing it by certified mail addressed to me at the address stated in the section above titled "Description Of The Property." A notice will be delivered or mailed to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Mortgage will be given by mailing it by certified mail to Lender's address stated in paragraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Mortgage is given when it is mailed or when it is delivered according to the requirements of this Paragraph 15.

## 16. LAW THAT GOVERNS THIS MORTGAGE

The state and local law that applies in the place that the Property is located will govern this Mortgage. This will not limit Federal law that applies to this Mortgage. If any term of this Mortgage or of the Note conflicts with the law, all other terms of this Mortgage and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Mortgage and the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

As used in this Mortgage, the words "costs," "expenses" and "attorneys' fees" include all amounts not prohibited by applicable law or limited in this Mortgage.

## 17. BORROWER'S COPY OF THE NOTE AND OF THIS MORTGAGE

I will be given copies of the Note and of this Mortgage. Those copies must show that the original Note and Mortgage have been signed. I will be given those copies either when I sign the Note and this Mortgage or after this Mortgage has been recorded in the proper official records.

## 18. REHABILITATION LOAN AGREEMENT

I will comply with all of the terms and conditions of any home rehabilitation, improvement, repair, modernization, remodeling or similar loan agreement I have with Lender. If Lender requests it, I will sign and give to Lender an assignment of any rights or claims I might have against persons who supply labor, materials or services in connection with improving the Property. This assignment will be in a form acceptable to Lender.

## 19. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require immediate payment in full of all sums secured by this Mortgage if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Mortgage.

If Lender requires immediate payment in full under this Paragraph 19, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Mortgage without giving me any further notice or demand for payment.

## NON-UNIFORM PROMISES

I also promise and agree with Lender as follows:

## 20. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS

If all of the conditions stated in subparagraphs (A), (B), and (C) of this Paragraph 20 are satisfied, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Mortgage. Lender may do this without making any further demand for payment. This requirement will be called "Immediate Payment In Full."

If Lender requires Immediate Payment In Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and to have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." If the proceeds of this sale are insufficient to repay Lender the amounts due to Lender from me under the Note and under this Mortgage, Lender may obtain a court judgment against me personally for the difference between all amounts due from me under the Note and this Mortgage and the sale proceeds. In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and expenses of the foreclosure and sale allowed by law.

Lender may require Immediate Payment In Full under this Paragraph 20 only if all of the following conditions are satisfied:

(A) I fail to keep any promise or agreement made in this Mortgage, including the promises to pay when due the amounts that I owe to Lender under the Note and under this Mortgage; and

(B) Lender gives to me, in the manner described in Paragraph 15 above, a notice that states:
    (i) The promise or agreement that I failed to keep;
    (ii) The action that I must take to correct that failure;
    (iii) A date by which I must correct the failure. That date must be at least 10 days from the date on which the notice is mailed to me;

(iv) That if I do not correct the failure by the date stated in the notice, I will be in default and Lender may require Immediate Payment In Full, and Lender or another person may acquire the Property by means of foreclosure and sale;

(v) That if I meet the conditions stated in Paragraph 21 below, I will have the right to have any lawsuit for foreclosure and sale discontinued and to have the Note and this Mortgage remain in full force and effect as if Immediate Payment In Full had never been required; and

(vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did not fail to keep any of my promises or agreements under the Note or under this Mortgage, and to present any other defenses that I may have; and

(C) I do not correct the failure stated in the notice from Lender by the date stated in that notice.

## 21. BORROWER'S RIGHT TO HAVE LENDER'S LAWSUIT FOR FORECLOSURE AND SALE DISCONTINUED

Even if Lender has required Immediate Payment In Full, I may have the right to have discontinued any lawsuit brought by Lender for foreclosure and sale or for other enforcement of this Mortgage. I will have this right at any time before a judgment has been entered enforcing this Mortgage if I meet the following conditions:

(A) I pay to Lender the full amount that would have been due under this Mortgage and the Note if Lender had not required Immediate Payment In Full; and

(B) I correct my failure to keep any of my other promises or agreements made in this Mortgage; and

(C) I pay all of Lender's reasonable expenses in enforcing this Mortgage including, for example, reasonable attorneys' fees; and

(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Mortgage, and my obligations under the Note and under this Mortgage continue unchanged.

If all of the conditions in this Paragraph 21 are fulfilled, then the Note and this Mortgage will remain in full force and effect as if Immediate Payment In Full had never been required.

## 22. LENDER'S RIGHTS TO RENTAL PAYMENTS FROM THE PROPERTY AND TO TAKE POSSESSION OF THE PROPERTY

As additional protection for Lender, I give to Lender all of my rights to any rental payments from the Property. However, until Lender requires Immediate Payment In Full under Paragraphs 19 or 20 above, or until I abandon the Property, I have the right to collect and keep those rental payments as they become due. I have not given any of my rights to rental payments from the Property to anyone other than the holder of the Superior Mortgage, and I will not do so without Lender's consent in writing. If Lender requires Immediate Payment In Full under Paragraphs 19 or 20 above, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter on and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change leases. I agree that if Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 22, the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Mortgage.

If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to be a tenant on the Property.

All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 22, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the amount that I owe to Lender under the Note and under this Mortgage. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees, and the cost of any necessary bonds. Lender and the receiver will be obligated to account only for those rental payments that they actually receive.

## 23. LENDER'S OBLIGATION TO DISCHARGE THIS MORTGAGE WHEN THE NOTE AND THIS MORTGAGE ARE PAID IN FULL

When Lender has been paid all amounts due under the Note and under this Mortgage, Lender will discharge this Mortgage by delivering a certificate stating that this Mortgage has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

**24. AGREEMENTS ABOUT NEW YORK LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that, if on the date this Mortgage is recorded in the proper official records, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or the work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that I have a special responsibility under the law to use the amounts in the manner described in this Paragraph 24.

**25. BORROWER'S STATEMENT REGARDING THE PROPERTY.** Check box(es) as applicable.

[X] This Security Instrument covers real property improved, or to be improved, by a one (1) or two (2) family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

**REQUEST FOR NOTICE OF DEFAULT**
**——————AND FORECLOSURE UNDER SUPERIOR——————**
**MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any superior mortgage or deed of trust to notify Lender in writing, at Lender's address on page 1 of this Mortgage, if the Borrower is required to make "Immediate Payment in Full" and if there is "foreclosure and sale" under that superior mortgage or deed of trust.

By signing this Mortgage I agree to all of the above.

Witnesses:

_____     _____ (Seal)
                                     STEPHEN F LUKE              - Borrower

                                     _____ (Seal)
                                     STEPHEN F. LUKE SR          - Borrower

_____     _____ (Seal)
                                     TIFFANY N. STUART           - Borrower

                                     _____ (Seal)
                                                                 - Borrower

*[Sign Original Only]*

**STATE OF NEW YORK,**                    KINGS    County ss:

On the 29TH _____ day of ___ SEPTEMBER 2005 _____ before me, the undersigned, a notary public in and for said state, personally appeared STEPHEN F. LUKE,

_____

_____

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Maria D'Alessandro
Notary Public

MARIA D'ALESSANDRO
Nota...                      ... w York
...
On...            ...County 2607
Commission Exp... June 20,

Tax Map Information: 7901 44

# 1-4 FAMILY RIDER
### (Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #:
7901 44

Prepared By:
BONNIE BURNETT

[Doc ID #]

THIS 1-4 FAMILY RIDER is made this TWENTY-NINTH    day of SEPTEMBER, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
5610 AVENUE N
BROOKLYN, NY 11234-4008
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP -57R (0401).01    CHL (06/04)(d)    Page 1 of 3
VMP Mortgage Solutions, Inc. (800)521-7291

Initials: 

Form 3170 1/01



DOC ID #. _ _ _ _ _ _ _ _ _ _

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and

Initials: _SFL_

maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
STEPHEN F. LUKE                                              - Borrower

_____ (Seal)
STEPHEN F. LUKE, SR                                       - Borrower
by Stephen F. Luke as attorney in fact

POWER OF ATTORNEY TO BE RECORDED
SIMULTANEOUSLY HERE WITH.
_____ (Seal)
TIFFANY N. STUART                                          - Borrower

_____ (Seal)
                                                                        - Borrower

VMP®-57R (0401).01 CHL (06/04)          Page 3 of 3          Form 3170 1/01

## BALLOON NOTE

LOAN #

WITH BALLOON PAYMENT

| SEPTEMBER 29, 2005 | BROOKLYN | NEW YORK |
|---|---|---|
| Date | City | State |

5610 AVENUE N, BROOKLYN, NY 11234-4008

Property Address

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 119,200.00  (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

### 2. INTEREST

I will pay interest at a yearly rate of  11.875 %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

### 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $ 1,214.65  .
I will make my payments on the day 1st  of each month beginning on November, 2005  . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on  OCTOBER 01, 2020  , I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any of my monthly payments by the end of  FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  2.000 % of my overdue payment, but not less than U.S. $ NOT APPLICABLE  and not more than U.S. $ NOT APPLICABLE  . I will pay this late charge only once on any late payment.

**(B) Notice from Note Holder**

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

**(C) Default**

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 5. THIS NOTE SECURED BY A MORTGAGE

In addition to the protections given to the Note Holder under this Note, a Mortgage, dated  SEPTEMBER 29, 2005  , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Mortgage describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

CONV
● Fixed Second NY Note with Balloon Payment
2C867-NY (06/05)(d)

Page 1 of 2





## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.**

THE TERM OF THE LOAN IS 15 YEARS. AS A RESULT, YOU WILL BE REQUIRED TO REPAY THE ENTIRE PRINCIPAL BALANCE AND ANY ACCRUED INTEREST THEN OWING 15 YEARS FROM THE DATE ON WHICH THE LOAN IS MADE.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

THIS IS A BALLOON PAYMENT NOTE AND THE FINAL PAYMENT OR BALANCE DUE UPON MATURITY IS $ 103,102.16 TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE NOTE HOLDER UNDER THE TERMS OF THE NOTE.

_____ (Seal)
STEPHEN F. LUKE
Borrower

_____ (Seal)
STEPHEN F. LUKE SR by Stephen F Luke
as atty in fact
Borrower

_____ (Seal)
TIFFANY N. STUART
Borrower

_____ (Seal)
Borrower

*(Sign Original Only)*

PAY TO THE ORDER OF

**See Attached Exhibit "A"**

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY

David A. Spector
Managing Director

Exhibit "A"

**WCRSI, LLC.**
**17011 Beach Blvd., Suite 300**
**Huntington Beach, CA 92647**

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, being bounded and described as follows:

BEGINNING at a point on the southerly side of Avenue N, distant 99 feet 8 inches westerly from the corner formed by the intersection of the southerly side of Avenue N and the westerly side of East 57th Street;

THENCE southerly parallel with East 57th Street and part of the distance through a party wall, 100 feet;

THENCE westerly parallel with Avenue N, 19 feet 10 inches;

THENCE northerly parallel with East 57th Street and part of the distance through a party wall, 100 feet to the southerly side of Avenue N;

THENCE easterly along the southerly side of Avenue N, 19 feet 10 inches to the point or place of BEGINNING.

**COUNTRYWIDE HOME LOANS, INC.**

Prepared by: MAYLA CANADA

DATE;        09/28/2005
BORROWER: STEPHEN F. LUKE SR
CASE #:
LOAN #:
PROPERTY ADDRESS: 5610 AVENUE N
                 BROOKLYN, NY 11234-4008

Branch #: 0000898
1 CORPORATE DRIVE, SUITE 722
SHELTON, CT 06460
Phone: (203) 944-3900
Br Fax No.: (203) 926-0610

# SIGNATURE AND NAME CERTIFICATION

BORROWER:
STEPHEN F. LUKE, STEPHEN F. LUKE SR,
TIFFANY N. STUART

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Security Instrument.)

STEPHEN F. LUKE SR
(Print or Type Name)                                    Signature

(If applicable, complete the following.)

THIS IS TO CERTIFY THAT I AM ALSO KNOWN AS:

STEPHEN LUKE SR 
(Print or Type Name)

(Print or Type Name)

(Print or Type Name)

(Print or Type Name)

* Signature and Name Certification
1E340-US (03/05)(d)

* 2 3 9 9 1 *

* 1 1 2 2 4 0 8 0 2 0 0 0 0 0 1 E 3 4 0 *

COUNTRYWIDE HOME LOANS, INC.

Prepared by: MAYLA CANADA

DATE:          09/28/2005
BORROWER: STEPHEN F. LUKE
CASE #:
LOAN #:
PROPERTY ADDRESS: 5610 AVENUE N
                 BROOKLYN, NY 11234-4008

Branch #: 0000898
1 CORPORATE DRIVE, SUITE 722
SHELTON, CT 06460
Phone: (203)944-3900
Br Fax No.: (203)926-0610

# SIGNATURE AND NAME CERTIFICATION

BORROWER:
STEPHEN F. LUKE, STEPHEN F. LUKE SR,
TIFFANY N. STUART

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Security Instrument.)

STEPHEN F. LUKE
(Print or Type Name)

Signature

(If applicable, complete the following.)

THIS IS TO CERTIFY THAT I AM ALSO KNOWN AS:

_____
(Print or Type Name)

_____
(Print or Type Name)

_____
(Print or Type Name)

_____
(Print or Type Name)

* Signature and Name Certification
1E340-US (03/05)(d)





**COUNTRYWIDE HOME LOANS, INC.**

Prepared by: MAYLA CANADA

DATE:        09/28/2005
BORROWER: TIFFANY N. STUART
CASE #:
LOAN #:
PROPERTY ADDRESS: 5610 AVENUE N
                  BROOKLYN, NY 11234-4008

Branch #: 0000698
1 CORPORATE DRIVE, SUITE 722
SHELTON, CT 06460
Phone: (203) 944-3900
Br Fax No.: (203) 926-0610

# SIGNATURE AND NAME CERTIFICATION

BORROWER:
STEPHEN F. LUKE, STEPHEN F. LUKE SR,
TIFFANY N. STUART

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Security Instrument.)



TIFFANY N. STUART
(Print or Type Name)                                    Signature

(If applicable, complete the following.)

THIS IS TO CERTIFY THAT I AM ALSO KNOWN AS:



TIFFANY STUART
(Print or Type Name)

_____
(Print or Type Name)

_____
(Print or Type Name)

_____
(Print or Type Name)

• Signature and Name Certification
1E340-US (03/05)(d)

## ALLONGE TO NOTE

Note Date:            09/29/2005

Loan Amount:          $119,200.00

In Favor of:          Countrywide HomeLoans Inc.

Executed by:          Stephen F Luke, and Stephen F Luke Sr., and Tiffany N Stuart

Property Address:     190 East 17th Street, Brooklyn, NY 11226


PAY TO THE ORDER OF:   West Coast 2014-7, LLC


WITHOUT RECOURSE:

**WCRSI, LLC**
Through: West Coast Servicing, Inc.,
Its Managing Member

By: Glenn Ohno
Its: VP Operations

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2006101601779001001E693E

### RECORDING AND ENDORSEMENT COVER PAGE

| | | |
|---|---|---|
| **Document ID: 2006101601779001** | Document Date: 10-07-2005 | Preparation Date: 10-16-2006 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| PLATINUM REAL ESTATE SOLUTIONS<br>9010 CORBIN AVE SUITE 1<br>NORTHRIDGE, CA 91324<br>818-998-8688 | PLATINUM REAL ESTATE SOLUTIONS<br>9010 CORBIN AVE SUITE 1<br>NORTHRIDGE, CA 91324<br>818-998-8688 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7901 | 44 | Entire Lot | 5610 AVENUE N |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2005000581025

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| COUNTRYWIDE HOME LOANS, INC.<br>1800 TAPO CANYON ROAD, SV-79<br>SIMI VALLEY, CA 93063 | WCRSI, LLC<br>17011 BEACH BLVD SUITE 300<br>HUNTINGTON BEACH, CA 92647 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    11-02-2006 08:29
City Register File No.(CRFN):
**2006000612403**

*City Register Official Signature*

Recording requested by:
Countrywide Home Loans, Inc.

When Recorded Return to:
**Platinum Real Estate Solutions**
9010 Corbin Ave., Suite 1
Northridge, CA 91324

CORPORATION ASSIGNMENT OF MORTGAGE
ID# ,

For value received, the undersigned, Countrywide Home Loans, Inc., 1800 Tapo
Canyon Road, Simi Valley, CA 93063, hereby grants, assigns and transfers to:
WEST LLC ,
17011 Beach Blvd , Suite 300, Huntington Beach, CA 92647
All its interest under that certain Mortgage dated 9/29/05, executed by:
STEPHEN F LUKE & STEPHEN F LUKE,SR, TIFFANY N STUART, Mortgagor as per
MORTGAGE recorded as Instrument No. 000500055i0z5    on 10/19/05  in Book
         Page          of official records in the County Recorder's Office
of KINGS County, NEW YORK.
Tax Parcel :
Original Mortgage $119,200.00
5610 AVENUE N, BROOKLYN, NY 11234

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest. and all rights accrued or to
accrue under said Mortgage.

This assignment is not subject to the requirements of Section 275 of the Real
Property Law because it is an assignment within the secondary mortgage market.

Dated: 10/07/2005    Countrywide Home Loans, Inc.


By _____
   Maribel Ledezma, Collateral Processing
   Officer-Countrywide Bank, N. A. as attorney in fact
   for Countrywide Home Loans, INC.

State of California
County of Ventura

On 10/07 2005 before me, Jose Juarez , personally appeared Maribel Ledezma,
personally known to me (or proved to me on the basis of satisfactory evidence)
to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their
duly authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the persons
acted, executed the instrument, and that such individual made such appearance
before the undersigned in the State of California, County of Ventura. Witness
my hand and official seal.

Signature: _____
             Jose Juarez

Prepared by: Maribel Ledezma
1800 Tapo Canyon Road SV-20
Simi Valley, CA 93063
Phone#: 805) 577-6039

JOSE JUAREZ
COMM. #14 7595
NOTARY PUBLIC CALIFORNIA
VENTURA COUNTY
My Comm. Expires March 2, 2006

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, being bounded and described as follows:

BEGINNING at a point on the southerly side of Avenue N. distant 99 feet 8 inches westerly from the corner formed by the intersection of the southerly side of Avenue N and the westerly side of East 57th Street;

THENCE southerly parallel with East 57th Street and part of the distance through a party wall, 100 feet;

THENCE westerly parallel with Avenue N, 19 feet 10 inches;

THENCE northerly parallel with East 57th Street and part of the distance through a party wall, 100 feet to the southerly side of Avenue N;

THENCE easterly along the southerly side of Avenue N, 19 feet 10 inches to the point or place of BEGINNING.

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2019102201085001001E9EA7

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

**Document ID: 2019102201085001**  Document Date: 10-22-2019  Preparation Date: 10-22-2019
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| KAYLEIGH GROVES<br>7911 WARNER AVE<br>HUNTINGTON BEACH, CA 92647<br>714-596-6333<br>Kayleigh@wcrsi.com | KAYLEIGH GROVES<br>7911 WARNER AVE<br>HUNTINGTON BEACH, CA 92647<br>714-596-6333<br>Kayleigh@wcrsi.com |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7901 | 44 | Entire Lot | 5610 AVENUE N |

**Property Type:** DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2005000581025

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| WCRSI, LLC<br>7911 WARNER AVE<br>HUNTINGTON BEACH, CA 92647 | WEST COAST 2014-7, LLC<br>7911 WARNER AVE<br>HUNTINGTON BEACH, CA 92647 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $  0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $  0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $  0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 47.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed     10-25-2019 12:15
City Register File No.(CRFN):
2019000349071

*Janette M Lill*

*City Register Official Signature*

## Assignment of Mortgage

Know All Men By These Presents:

That WCRSI, LLC whose address is 7911 Warner Ave, HUNTINGTON BEACH, CA 92647 ("Assignor") does hereby grant, sell, assign, transfer, and convey unto WEST COAST 2014-7, LLC, whose address is 7911 Warner Ave, HUNTINGTON BEACH, CA 92647 ("Assignee"), all right, title and interest in and to that certain Mortgage dated 09/29/2005, made and executed by Stephen F Luke and Stephen F Luke SR., and Tiffany Stuart, to Countywide Home Loans, Inc., recorded on 10/19/2005 upon the following described property situated in Kings County, New York covering the premises in said County and State at the following property address: 5610 Avenue N, Brooklyn, NY 11234

BLOCK: 7901 LOT: 44
LEGAL DESCRIPTION: See Attached Exhibit A

This assignment is not subject to the requirements of section two hundred seventy-five of the Real Property Law because it is an assignment within the secondary mortgage market.

Said Mortgage securing repayment of indebtedness in the amount of $180,000.00; together with all Notes or obligations described in said Mortgage, without recourse, and all moneys due and to become due there under with interest; To Have and To Hold the same unto the said Assignee and its successors and assigns forever.

Assignor has caused these presents to be executed and sealed by its authorized representative on
_10/22/2019_ .

WCRSI, LLC
Through: West Coast Servicing, Inc.,
Its Managing Member

By: Glenn Ohta
Its: VP Operations

A notary public or other officer completing this certificate verifies only identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document.

State of California      }
County of Orange      }

On __10/22/2019__, before me, Rhianna Marie Baker , a Notary Public,
personally appeared ___Glenn Onno___ who proved to me on the basis of
satisfactory evidence to be the person (s) whose name (s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
        Notary Public

RHIANNA MARIE BAKER
Notary Public · California
Orange County
Commission # 2240117
My Comm. Expires Apr 27, 2022

**SEAL**

This instrument was prepared by:
WEST COAST SERVICING, INC

When recorded, return to:
West Coast Servicing, Inc
7911 Warner Ave
Huntington Beach, CA 92647